**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

DEREK WATSON,

                 Plaintiff,

-vs-

FELIX TREVINO, et al.,

                 Defendants.

_____/

CASE NO. 05-CV-74043

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

## OPINION AND ORDER DENYING
## PLAINTIFF'S MOTION FOR LEAVE TO FILE AN AMENDED COMPLAINT

Before the Court is Plaintiff Derek Watson's ("Plaintiff") February 20, 2007 Motion for

Leave to File an Amended Complaint. (Doc. No. 100). Defendants Urban, Colosky, and Trevino

filed separate Responses on May 1, 2007. Defendants Bonadurer, Cremonte, and Pennell wrote a

joint letter to the Court on April 23, 2007, stating that they were not planning on filing a

Response, unless directed by the Court. Having considered the entire record, and for the reasons

that follow, the Court **DENIES** Plaintiff's Motion for Leave to File an Amended Complaint.

## I.     BACKGROUND

The facts and procedural history of this case are recounted in this Court's January 24,

2007 Order Granting in Part and Denying in Part Defendants' Motions for Summary Judgment.

*See Watson v. Trevino*, No. 05-74043, 2007 WL 201084 (E.D. Mich. Jan. 24, 2007)

(unpublished). In that Order, the Court granted summary judgment for several Defendant police

officers on Plaintiff's 42 U.S.C. § 1983 excessive form claim, and ruled that Plaintiff's excessive

force claim could go forward to trial against Defendants Colosky, Rust, and Salter. *Id*. at *11.

1

Plaintiff's instant motion seeks leave from the Court to amend his Complaint to add the following claims against Defendants Felix Trevino and Don Urban: (1) Count II: § 1983 illegal search; and (2) Count III: § 1983 excessive force flowing from the illegal search. (Pl. Br. Ex. H, Proposed First Amended Complaint).

The Court will begin by recounting the relevant procedural history of Plaintiff's motion. On January 24, 2007, the Court issued an Order granting in part and denying in part Defendants' motions for summary judgment. On February 7, 2007, Plaintiff filed: (1) a Motion for Reconsideration of the Court's January 24, 2007 Order under Fed. R. Civ. P. 59(e); (2) a Motion for Relief from Judgment under Fed. R. Civ. P. 60(b); and (3) a Motion for Leave to File an Amended Complaint. (Doc. No. 94). Plaintiff then filed a Supplemental Brief in support of the above motions on February 14, 2007. (Doc. No. 96).

On February 15, 2007, the Court struck Plaintiff's February 7, 2007 Brief for exceeding the page limit set forth in E.D. Mich. L. R. 7.1(c). (Doc. No. 97).

On February 19, 2007, Plaintiff refiled as two separate motions his Motion for Reconsideration and his Motion for Relief from Judgment. (Doc Nos. 98, 99). The next day, Plaintiff filed a Motion for Leave to File an Amended Complaint. (Doc. No. 100).

On March 2, 2007, the Court (a) struck Plaintiff's February 14, 2007 Supplemental Brief for exceeding the page limit; (b) struck Plaintiff's Motion for Relief from Judgment as untimely; and (c) denied Plaintiff's Motion for Reconsideration. *See Watson v. Trevino*, No. 05-74043, 2007 WL 674654 (E.D. Mich. Mar. 2, 2007) (unpublished).

On April 17, 2007, the Court requested that Defendants respond to Plaintiff's Motion for Leave to File an Amended Complaint. (Doc. No. 107). Defendants Urban, Colosky, and Trevino

filed separate Responses on May 1, 2007. Defendants Bonadurer, Cremote, and Pennell wrote a letter to the Court on April 23, 2007, stating that they were not planning on filing a Response, unless directed by the Court, since those Defendants were dismissed by the Court's January 24, 2007 Order and were not named in Plaintiff's proposed Amended Complaint.

In support of his motion for leave to amend, Plaintiff argues that his Complaint had placed Defendants Trevino and Urban on sufficient notice of § 1983 illegal search and excessive force claims. Plaintiff admits that although his Complaint in this Court contains only one Count (excessive force), paragraphs in the Complaint and the summary judgment briefing put Defendants Trevino and Urban on notice of an illegal search claim. (Compl. ¶¶ 7, 18, 19, 20, 22, 27, 28, 29, 33, 34). Plaintiff also contends that Defendants Trevino and Urban were on notice of an excessive force claim that "flowed from" or was the "natural consequence of" their actions in obtaining an illegal warrant. (Pl. Br. 5-6). As a result, Plaintiff insists that he should be granted leave to file an amended complaint under Fed. R. Civ. P. 15.

Defendants oppose Plaintiff's Motion under Fed. R. Civ. P. 16 and 15, and alternatively argue that Plaintiff's proposed amendments should be denied as futile.

For the following reasons, the Court DENIES Plaintiff's Motion for Leave to File an Amended Complaint.

## II.  ANALYSIS

### A.  Section 1983 Illegal Search Claim

#### 1.  Rule 16(b)

Defendants contend that Plaintiff must satisfy the requirements of Fed. R. Civ. P. 16 before the Court can determine whether to grant Plaintiff's motion under Fed. R. Civ. P. 15(a).

Federal Rule of Civil Procedure 16(b) provides:

> Except in categories of actions exempted by district court rule as inappropriate, the district judge, or a magistrate judge when authorized by district court rule, shall, after receiving the report from the parties under Rule 26(f) or after consulting with the attorneys for the parties and any unrepresented parties by a scheduling conference, telephone, mail, or other suitable means, enter a scheduling order that limits the time
>
> > (1)    to join other parties and to amend the pleadings;
> > (2)    to file motions; and
> > (3)    to complete discovery.
>
> The scheduling order also may include
>
> > (4)    modifications of the times for disclosures under Rules 26(a) and 26(e)(1) and of the extent of discovery to be permitted;
> > (5)    provisions for disclosure or discovery of electronically stored information;
> > (6)    any agreements the parties reach for asserting claims of privilege or of protection as trial-preparation material after production;
> > (7)    the date or dates for conferences before trial, a final pretrial conference, and trial; and
> > (8)    any other matters appropriate in the circumstances of the case.
>
> The order shall issue as soon as practicable but in any event within 90 days after the appearance of a defendant and within 120 days after the complaint has been served on a defendant. A schedule shall not be modified except upon a showing of good cause and by leave of the district judge or, when authorized by local rule, by a magistrate judge.

The United States Court of Appeals for the Sixth Circuit has held that in order for a party to amend a complaint, beyond the deadline set by a district court's scheduling order, a plaintiff must show "good cause" under Rule 16(b) before the Court can consider whether it will allow a party to amend a complaint under Rule 15:

> Once the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a). Our previous decisions suggest that the district court also is required to evaluate prejudice to the opponent before modifying the scheduling order. Thus, in addition to Rule 16's explicit "good cause" requirement, we hold that a determination of the potential prejudice to the nonmovant also is required when a district court decides whether or not to amend a scheduling order.

*Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003) (internal citations omitted).

Hence, under Rule 16(b), the Court must determine whether: (1) Plaintiff violated the deadlines in the scheduling orders; and (2) "good cause" exists for modifying the scheduling order, including an analysis of potential prejudice to Defendants by granting Plaintiff's request.

In this case, the Court entered three Scheduling Orders, on: (1) January 30, 2006; (2) April 4, 2006; and (3) January 25, 2007. The April 4, 2006 Scheduling Order superseded the Order entered on January 30, 2006. (Doc. No. 48). The January 25, 2007 Scheduling Order only established deadlines for the Joint Pretrial Order and a date for the Final Pretrial Conference. (Doc. No. 92).

The April 4, 2006 Scheduling Order provided, in relevant part:

| | | |
|---|---|---|
| 1. | Deadline for identification of all witnesses including experts: | 7/5/06 |
| 2. | Closing date for all Discovery: | 8/4/06 |
| 3. | Deadline for Filing of Dispositive Motions: | 9/5/06 |
| 4. | Case referred to Mediation (if parties stipulate): | 8/4/06 |

The Court held a hearing on Defendants' dispositive motions on November 22, 2006. On January 24, 2007, the Court issued an Order on Defendants' summary judgment motions.

After the issuance of the Order on Defendants' dispositive motions, the Court entered a Scheduling Order on January 25, 2007, establishing the deadline for the joint final pretrial order and setting a time and date for the final pretrial conference:

| | | |
|---|---|---|
| 6. | Deadline for filing Joint Pretrial Order: | February 28, 2007 |
| 7. | Final Pretrial Conference date and time: | March 7, 2007 at 3:00 p.m. |

On February 20, 2007, Plaintiff filed the present Motion for Leave to File an Amended Complaint for permission to add an illegal search claim and an excessive force claim against Defendants Trevino and Urban.

Defendants argue that Plaintiff cannot satisfy the "good cause" requirement to allow a modification of the Court's Scheduling Order under Rule 16(b). Defendants contend that Plaintiff is attempting to add additional causes of action almost two years after Plaintiff admits to discovering a potential claim for illegal search. Defendants point out that upon discovering this new claim, Plaintiff had ample opportunity to amend his Complaint in both state and federal courts. Defendants state that the "good cause" requirement cannot be satisfied by Plaintiff's assertions that Defendants were aware of the claims that Plaintiff "intended to plead, but did not [plead]." (Def. Colosky Br. 8). They also point out that at the November 22, 2006 summary judgment motion hearing, Plaintiff's counsel admitted to the Court on the record that the Complaint only stated a claim for excessive force under § 1983.

Defendants also contend that they would be prejudiced by a modification of the scheduling order at this late date in the case. Defendants point out that in the prior state court proceeding, involving the very same case, Plaintiff's Complaint included claims of assault & battery, false arrest and false imprisonment, and gross negligence – and that significant discovery took place on those issues. (Def. Colosky Br. 9). During the course of the state proceedings, claims were often raised and subsequently dismissed. Defendants claim that when the state court action was dismissed and suit was filed in federal court, they could not be held responsible for "knowing Plaintiff's intentions outside of the claims contained within the Complaint." (*Id.*). Defendants claim that allowing Plaintiff to amend the Complaint at this stage would result in a new scheduling order, the reopening of discovery, and another round of dispositive motions. (*Id.* at 10).

Plaintiff argues that since the Court did not enter a scheduling order that specifically established a deadline for filing amendments to a complaint, Rule 16(b) does not apply. Plaintiff relies upon *Inge v. Rock Financial Corporation*, 281 F.3d 613 (6th Cir. 2002), and *Leary*.

Under these circumstances, the Court declines to address the issue of whether, in the absence of specific deadline set by the scheduling order, the "good cause" requirement of Rule 16(b) applies to Plaintiff's request. As a result, the Court will analyze whether to grant Plaintiff's Motion under Rule 15.

> 2.    Rule 15

Plaintiff's request to amend is properly considered under Rule 15(a), which states:

A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar, the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. A party shall plead in response to an amended pleading within the time remaining for response to the original pleading or within 10 days after service of the amended pleading, whichever period may be the longer, unless the court otherwise orders.

The Supreme Court has elaborated on this standard:

In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc. – the leave sought should, as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962); *see Leary*, 349 F.3d at 905.

The Court finds that the Sixth Circuit cases *Leary* and *Duggins v. Steak 'N Shake*, 195 F.3d 828 (6th Cir. 1999), are instructive on whether there has been any undue delay, bad faith, or undue prejudice in Plaintiff's instant request.

In *Duggins*, the plaintiff brought a Title VII retaliation claim against her employer. After the deadlines for discovery and for dispositive motions had passed, the plaintiff filed a motion for leave to file an amended complaint to add a Fair Labor Standards Act claim against the defendant. 195 F.3d at 833-34. The district court denied the plaintiff's motion.

The Sixth Circuit affirmed the district court's denial of the plaintiff's motion to amend, stating:

> In this case, the district court named both undue delay in missing deadlines and undue prejudice to the opponent in allowing amendment after the close of discovery in coming to its decision. The plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint. Plaintiff delayed pursuing this claim until after discovery had passed, the dispositive motion deadline had passed, and a motion for summary judgment had been filed. There appears to be no justification for the delay, and the plaintiff proposes none. Allowing amendment at this late stage in the litigation would create significant prejudice to the defendants in having to reopen discovery and prepare a defense for a claim quite different from the sex-based retaliation claim that was before the court. The district court did not abuse its discretion in denying leave to amend the complaint at such a late stage of the litigation.

*Id*. at 834. Thus, the *Duggins* court found that denying the motion was proper in that instance as a result of undue delay and significant prejudice, where: (a) the plaintiff was aware of the claim; (b) the complaint stated facts that comprised the claim; (c) no justification for the delay was proffered; and (d) allowing amendment would necessitate the reopening of discovery.

In *Leary*, the court found that the plaintiffs were aware of their new claim, cognizant of the underlying facts of that claim, and failed to provide a justification for the delay. 349 F.3d at 907 n. 25 ("Plaintiffs offered no excuse in their memorandum in support of their second amended complaint, but in their appellate brief they suggest that they were requesting monetary damages all along and that a monetary damage component was implied"); *see Benzon v. Morgan Stanley Distribs., Inc.*, 420 F.3d 598, 613-14 (6th Cir. 2005) (upholding the district court's denial

a post-judgment motion to amend the complaint where the plaintiff failed to claim new facts to justify a delay and had been permitted to amend the complaint on two prior occasions).

For the purposes of the motion for leave to amend under 15(a), Plaintiff argues that: (1) Defendants were on "notice" of the illegal search claim; (2) Plaintiff did not "waive" an illegal search claim; (3) the amendment would not be futile. Plaintiff also relies upon *Neely v. Miller Brewing Co.*, No. 98-356, 1999 U.S. Dist. LEXIS 23291 (S.D. Ohio Jan. 4, 2000) (unpublished), *Janikowski v. Bendix Corp.*, 823 F.2d 945 (6th Cir. 1987), and *Tefft v. Seward*, 689 F.2d 637 (6th Cir. 1982).

As to Plaintiff's first two arguments, that Plaintiff's pleadings put Defendants "on notice" of an illegal search claim and that Plaintiff did not "waive" an illegal search claim, the Court has already considered these arguments and determined that Plaintiff's Complaint only states one Count, excessive force under § 1983. *See Watson*, 2007 WL 674654, at *2-3. The fact that Plaintiff's brief rambles does not amount to notice that the single-count Complaint should be understood to contain additional undesignated Counts.

The Court does not find that the cases cited by Plaintiff in support of his motion are analogous. In *Neely*, the plaintiff brought suit based upon race discrimination and retaliation under Title VII and 42 U.S.C. § 1981. 1999 U.S. Dist. LEXIS 23291, at *5-6. The defendants moved for summary judgment on those claims. *Id*. at *6. Before the adjudication of the summary judgment motions, Plaintiff requested leave to file an amended complaint to include race discrimination and retaliation under state law. *Id*. The district court found that amending the complaint in that instance would not be prejudicial since the factual allegations and legal

standards underpinning the state law claims were identical to those supporting a Title VII and § 1981 action. *Id*. at *7-8.

In *Janikowski*, the plaintiff filed an ADEA and a state law age discrimination claim. On the day after the summary judgment argument on the discrimination claims, yet before the dispositive motion cut-off date, the plaintiff requested to amend the complaint to add a breach of contract claim. 823 F.2d at 951. After the court held a summary judgment hearing, the district court permitted additional briefing on the plaintiff's brief of contract claim. *Id*. The court granted summary judgment a few months later, but did not rule on the plaintiff's motion to amend the complaint or on the merits of the breach of contract claim. *Id*. The Sixth Circuit reversed, noting that the only prejudice to the defendant would be a "second round of discovery" and ordered the plaintiff to bear a portion of that cost. *Id*. at 951-52.

In *Tefft*, the plaintiff filed a complaint asserting a common law assault & battery claim against federal agents. 689 F.2d at 638. The plaintiff's complaint was dismissed by the district court on a statute of limitations argument, but then that order was reversed by the Sixth Circuit. On remand, the defendants moved for summary judgment; and the plaintiff requested, but did not formally move for, an amendment to the complaint to add a constitutional tort arising out of the same underlying facts as the assault & battery claim. The district court denied the plaintiff's request. The Sixth Circuit reversed, stating that "[i]t is obvious that the facts set forth in Tefft's original complaint would support a cause of action for a constitutional tort, as well as assault and battery." *Id*. at 639.

The instant case is distinguishable from *Neely* and *Tefft*. In those cases, the courts found no significant prejudice in allowing the plaintiffs to amend their complaints since the factual

underpinnings of the claims that the plaintiffs sought to add were identical to those already plead. In *Neely*, the district court found that the federal and state discrimination claims were plead by the same facts and were governed by a similar legal analysis. In *Tefft*, the Sixth Circuit similarly observed that assault & battery by a federal officer and a constitutional tort for excessive force also shared the same facts and similar legal analysis. Furthermore, the *Tefft* court was concerned that denying the leave to amend would also dismiss the entire case. *Id*. at 639.

The instant § 1983 illegal search claim does not share the same factual or legal underpinnings as a § 1983 excessive force claim. Additionally, the plaintiffs in both *Neely* and *Tefft* requested a leave to file an amended complaint before the court had entertained dispositive motions. In *Janikowski*, the plaintiff requested a motion to leave to amend on the date of the dispositive motions, the court then ordered additional briefing and oral argument, then granted summary judgment to the defendants without considering the plaintiff's motion to amend. Furthermore, to the extent that *Janikowski* holds that the solution to a late-filed request to amend is to grant the request and to shift the costs of the new round of discovery to the moving party, the Court believes that this analysis has been superseded by *Duggins* and *Leary*.

Plaintiff originally filed the instant action in state court.[1] Over the course of the state case, Plaintiff filed two amended complaints. Plaintiff's July 14, 2005 second amended state

---

[1]  The Court has previously summarized the timeline of the state and federal cases. *See Watson*, 2007 WL 201084, at *3-4. The Court will repeat a few of those details here to provide the full flavor of Plaintiff's conduct in the instant case.

Plaintiff originally filed a state court case against certain municipal and individual defendants in Genesee County Circuit Court on November 9, 2004. *See Watson v. Genesee County*, No. 04-80209-CZ (Genesee County Circuit Ct. filed Nov. 9, 2004). The first state court complaint asserted, in bold capital typeface: Count I: Assault & Battery and Count II: Gross Negligence. The complaint named the following defendants: Genesee County, James Corona, Gary Parsons, Don Urban, Troy Bonadurer, Jeff Antcliff, Rick Kane, Trevino, Sallier, Mark Kloostra, Tom Cremonte, and Certain Other Unidentified Officers.

On November 22, 2004, Plaintiff filed a first amended complaint in state court asserting the same Assault & Battery and Gross Negligence claims against defendants Genesee County, James Corona, Gary Parsons, Don Urban, Troy Bonadurer, Jeff Antcliff, Rick Kane, Felix Trevino, Kevin Salter, Tom Cremonte, and Certain Other Unidentified Officers.

On June 8, 2005, Plaintiff filed a motion to file a second amended complaint. The state court granted Plaintiff's request. On July 14, 2005, Plaintiff filed a second amended complaint in state court asserting, in bold capital typeface: Count I: Assault & Battery, Count II: False Arrest and Imprisonment, and Count III: Gross Negligence. The named defendants were Genesee County, Gary Parsons, Don Urban, Troy Bonadurer, Jeff Antcliff, Rick Kane, Felix Trevino, Kevin Salter, Tom Cremonte, and Certain Unidentified Officers. (This Court's January 24, 2007 Order indicated that Plaintiff filed his second amended state court complaint on May 17, 2005, but the state court docket sheet indicates that it was actually filed with the state court on July 14, 2005.)

On August 8, 2005, the state court granted summary disposition to Genesee County.

On August 30, 2005, Plaintiff filed a Complaint in federal Court asserting, in bold capital typeface: Count I: Excessive Force against Defendants Felix Trevino, Don Urban, Troy Bonadurer, Kevin Salter, Steven Colosky, Tim Cook, Christopher Rhind, and Scott Rust. Plaintiff voluntarily dismissed that federal case on September 12, 2005.

On October 31, 2005, Plaintiff filed a second, nearly-identical federal Complaint, again alleging the same single Count: Excessive Force, against the same defendants, with the exception of Rick Kane.

On January 23, 2006, the state court granted summary disposition to Rick Kane.

On April 10, 2006, the state court granted summary disposition to Bonadurer, Cremonte, Kane, and Parsons on Plaintiff's claims.

On April 26, 2006, the state court dismissed Plaintiff's claims of assault & battery and false arrest as to Trevino. On May 17, 2006, Plaintiff appealed the state court decision dismissing the claims against Trevino.

On May 26, 2006, the parties agreed to a voluntarily dismissal without prejudice in the state case of Plaintiff's claims as to Urban and Salter.

On July 14, 2006, the parties agreed to a voluntary dismissal without prejudice in the state case as to the remaining claims against Trevino.

On August 16, 2006, the Michigan Court of Appeals dismissed Plaintiff's appeal as to Trevino for want of prosecution, since Plaintiff failed to file a timely brief on appeal.

court complaint clearly asserted, in bold capital typeface, the following state law causes of

action: (1) assault & battery; (2) false arrest and false imprisonment; and (3) gross negligence.

Plaintiff admits that at that time of the filing of the second amended complaint in state

court, he was on notice of a possible federal illegal search claim:

> Eventually, Plaintiffs filed Motions for Summary Disposition against the Defendants in
> the State Court Action. In their responses, Defendants also requested that they be granted
> Summary Disposition. At the motion hearing, notwithstanding the favorable rulings that
> the Court had previously handed down with respect to allowing Plaintiffs to amend their
> complaint to pursue a claim relating to the invalid warrant, and the court's other
> favorable rulings, the Judge granted Summary Disposition to the Defendants. At that
> time, leave was requested to Amend the Complaint to add Federal Counts as to Fourth
> Amendment illegal search claim but that request was turned down by the [state court
> judge]. The Judge indicated that she felt the Federal Claims should be dealt with by a
> Federal Judge.

(Pl. Br. 4).

Plaintiff has not filed any transcript setting forth that language from the state court judge.

Plaintiff did not appeal that decision. Hence, according to Plaintiff's instant brief, during the

course of the state case, he had knowledge of a potential federal illegal search claim – at least

since May 2005 – and also attempted to amend his state court complaint to include it. [2] Plaintiff's

assertions that he did not "discover" the grounds for federal claims until that point in the state

case are disingenuous, since state law claims of assault & battery and false arrest/imprisonment

against police officers and § 1983 actions for excessive force and illegal search share similar, if

not the same, factual predicates. Plaintiff did not present a § 1983 illegal search claim to the

federal court until this belated motion.

Before Plaintiff's state court case was dismissed with prejudice in part and without

prejudice in part in April through July 2006, Plaintiff decided to take a "second shot at the apple"

---

[2] To date, Plaintiff has not produced any record or disposition from the state court pertaining to
his attempted filing of a third amended complaint to include § 1983 claims.

by filing a federal lawsuit. Plaintiff filed two federal lawsuits – the first on August 30, 2005, and the second on October 21, 2005. Plaintiff voluntarily dismissed without prejudice the first federal Complaint on September 12, 2005. Both Complaints stated one Count, in bold capital typeface: "Count I: Violation of 42 U.S.C. § 1983 Excessive Force."

Plaintiff's first federal Complaint made a false representation to the Court that there was no other pending or resolved civil actions arising out of the same facts, – e.g., the state case. The caption of the first federal Complaint read:

> There is no other pending or resolved civil action rising [sic] out of the transaction or occurrence alleged in the Complaint.

Plaintiff also falsely represented to the Federal Court on the Civil Case Cover Sheet that that the case was an "Original Proceeding" and left blank Column VII "Related Case(s) If Any." Plaintiff's counsel, Christopher J. Trainor, signed his name about the bottom of the form, verifying the accuracy of the information contained on the Civil Cover Sheet.

Plaintiff's second federal Complaint, virtually identical in all respects to the first, omitted the caption on the first page of the Complaint stating that there were "no other civil cases pending." The Civil Case Cover sheet similarly indicated that the action was an "Original Proceeding" and "Reinstated or Reopened." Plaintiff's counsel again failed to include the required information in Column VII about the pending state case. Plaintiff's counsel, Christopher J. Trainor, similarly signed the bottom of the Civil Case Cover Sheet.

Thus, as of August-October 2005, Plaintiff was pursuing two cases arising out of the same facts, against the same pool of Defendants, and asserting similar claims. Since this Court was unaware of the existence of the pending parallel state case at the time of the filing of the

federal Complaints, due to Plaintiff's misrepresentations, it could not stay the federal

proceedings, or take other appropriate action to prevent duplicitous litigation.

All discovery and depositions in the instant matter were conducted in connection with the

state case. As apparent by Plaintiff's counsel's statements in certain depositions taken in

connection with the state case, Plaintiff assumed that he would be able to conduct additional

discovery, including re-deposing the state court parties on a later date, on his federal claims. For

instance, at the deposition of Defendant Urban, taken on September 15, 2005, Plaintiff's counsel

stated on that record that the deposition was limited to the state claims:

> Plaintiff's Counsel:  Let the record reflect this is the deposition of Donald Urban, taken
> pursuant to notice and agreement of counsel of record, to be used
> for any and all purposes consistent with the Michigan Court Rules,
> Michigan Rules of Evidence only. To be used for purposes in
> conjunction with the case of Watson versus Trevino, et al.

(Urban Dep. 5:8-14). Plaintiff's counsel made similar declarations at the depositions of

Defendants Cook and Colosky on September 13, 2005. (Colosky Dep. 6:14-21; Cook Dep. 6:15-

21).[3]

Beginning in April 2006, Plaintiff began receiving unfavorable dispositive rulings in the

state court action. During May and June 2006, Plaintiff voluntarily abandoned, through

stipulation with defense counsel, his remaining unresolved state law claims of assault & battery,

false arrest/imprisonment, and gross negligence against the defendants that still remained in the

state case. The parties agreed to a voluntary dismissal without prejudice of the remaining claims

against Salter, Trevino, and Urban in May and July 2006.

---

[3]  Plaintiff later argued in a discovery motion before the Magistrate Judge that Defendants'
attorneys' failure to object to this arrangement at the depositions waived their opposition to
Plaintiff's request to re-depose the same Defendants in the federal case. Defendants' attorneys
did not assent or object to Plaintiff's unilateral declaration on the record. Indeed, from September
12, 2005 until October 21, 2005, there was no federal case pending against Defendants.

Next, Plaintiff attempted to re-depose several of Defendants in the federal case during the summer of 2006, on the grounds that Plaintiff's federal case required additional discovery. Plaintiff knew of potential federal claims during Defendants' initial depositions in state court, yet believed that a federal court would allow those individuals to be re-deposed because Plaintiff believed that the state and federal claims had a different factual basis. Plaintiff filed a motion to compel to re-depose several Defendants on the "new" federal issues. The Magistrate Judge denied his request on September 26, 2006. (Doc. No. 76). Plaintiff filed Objections to that Order on September 29, 2006. This Court affirmed the Magistrate Judge's Order on November 14, 2006. (Doc. No. 88).

Since this Court was never made aware by the parties of the state case, upon its discovery of the state court proceedings during the Fall of 2006, the Court requested, on October 25, 2006, that the parties address the preclusive effects, if any, of that action upon the federal court proceedings.[4]

At the November 22, 2006 summary judgment motion hearing, the Court asked Plaintiff's counsel directly whether the Complaint only stated one Count, excessive force. Counsel for Plaintiff represented to the Court that the complaint included only that one Count. (Tr. 11/22/06 at 6).

The Court ruled on the motions for summary judgment on the excessive force claim on January 24, 2007. On March 2, 2007, the Court subsequently denied Plaintiff's motion for reconsideration.

---

[4]  The Court subsequently held in its Summary Judgment Order that Plaintiff could not pursue a claim against Defendant Bonadurer on Plaintiff's excessive force claim, since the state court granted him summary disposition on Plaintiff's assault & battery claim. *See Watson*, 2007 WL 201084, at *6-7.

A recent Sixth Circuit decision, *Dean v. City of Bay City*, No. 06-1192, 2007 WL 1427035 (6th Cir. May 15, 2007) (unpublished), noted that "the district court need not grant leave to amend if there is evidence of delay, prejudice, or futility. In this case, discovery was closed, dispositive motions were filed, and judgment had already been entered in favor of the defendants." *Id.* at *4.

The Court finds that there is evidence of bad faith and undue delay by Plaintiff, and significant prejudice to Defendants in this instance. Plaintiff has admittedly been aware of a § 1983 illegal search claim at least since May 2005. Plaintiff never produced a state court order or transcript supporting his assertion that the state court judge pronounced that his "federal claims belong[ed] in federal court."[5] Even if the state court judge made such a ruling, Plaintiff did not appeal that purported denial.[6] Instead, after the completion of the state court discovery on assault & battery and false arrest/imprisonment claims, and after the tide was beginning to turn again him in the state court case, he chose to abandon his remaining state law claims and "remove" his case to federal court. Even though Plaintiff had notice of his possible federal claims during the state case, Plaintiff believed that in addition to the state court deposition testimony on the facts underlying his claim, he would be permitted subsequently to re-depose Defendants on his "new"

---

[5] The state court docket sheet does not indicate that Plaintiff ever filed a motion for leave to file a third amended complaint in state court to add federal § 1983 claims.

[6] The law of collateral estoppel in Michigan applies to claims that have been brought by a party and claims that could have been discovered through reasonable diligence. *Cogan v. Cogan*, 119 Mich. App. 476, 478 (1982) ("However, Michigan follows a broad rule of res judicata which applies not only to points on which the court was actually required by the parties to form an opinion and pronounce judgment but to every point which properly belongs to the subject of the litigation and which the parties, exercising reasonable diligence, might have brought forward at the time"). Since the state court did not have an opportunity to make a final judgment on several of Plaintiff's claims that were subsequently brought in the federal case, this Court could not technically apply the *Rooker-Feldman* doctrine and collateral estoppel / res judicata doctrines, as recently reformulated by the Supreme Court in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), to bar Plaintiff's subsequent assertion of § 1983 claims in a federal court.

federal claims. Plaintiff then led this Court to believe in his two federal Complaints, that the state

case did not exist. The Court, of course, did not discover the existence of the pending state case

until after the state case had been dismissed.

Despite Plaintiff's counsel's admission to this Court at the summary judgment hearing

that the Complaint only stated one count and Plaintiff's post-hoc efforts to blame the oversight

on both a former attorney and the attorney sent to argue against Defendants' summary judgment

motion,[7] this Court is aware that the Federal Rules of Civil Procedure only require "a short and

plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

Plaintiff insists for the purpose of this Motion that despite the caption on the Complaint stating

"Count I: Violation of 42 U.S.C. § 1983 Excessive Force," multiple, non-sequential paragraphs

in the Complaint also support a § 1983 illegal search claim.[8]

Defendants respond that given the split-personality nature of this case – with discovery

being completed in the state case on state law issues and with the state court's partial judgment

as to certain claims, only to have Plaintiff ultimately decide to prosecute the case in federal court

on federal issues – it was difficult for them to determine what claims were being asserted and

against whom.[9] Furthermore, Plaintiff's previous state court complaints clearly demonstrated that

Plaintiff's counsel knew how to caption and to allege multiple individual claims in bold capital

type. In fact, given the filing of three state court complaints and two federal complaints, Plaintiff

---

[7]  The Court has previously dealt with these arguments in its March 2, 2007 Order. *See Watson*,
2007 WL 674654.

[8]  Plaintiff cites paragraphs 7, 18, 19, 20, 22, 27, 28, 29, 33, and 34 in the Complaint as support
for an illegal search claim. Upon review of the Complaint, the Court finds that paragraphs 7, 18,
and 22 do not plead facts establishing a § 1983 illegal search claim. As to the other paragraphs,
they do not act to create a new Count in the twice-filed single-Count Complaints.

[9] Defendants' assertions that they were generally unaware of the contours of Plaintiff's federal
claim are further buttressed by the fact that Urban only devoted three and half pages of his
summary judgment brief in addressing that claim, and the rest of the brief to Plaintiff's stated
claim of excessive force. Moreover, Defendant Trevino did not address Plaintiff's claim at all.

has now had five opportunities to assert his claims, and now requests a sixth. Plaintiff also filed four complaints before taking a single deposition in the case. After the filing of five Complaints, each of which asserted numbered claims in bold capital typeface, Plaintiff's argument now is that several non-contiguous paragraphs in the complaint, when taken together, state an illegal search claim under the "notice pleading" standard in federal court.

The Court disapproves of the litigation tactics in this case – Plaintiff's multiple misrepresentations concerning the state case, and Plaintiff's counsel's baseless and after-the-fact excuses for his procedural missteps before this Court. The Court finds that this history of the case is relevant in determining whether Plaintiff's current request to amend is motivated by bad faith and undue delay and would otherwise cause Defendants serious prejudice.

Thus, for the foregoing reasons, the Court finds that adequate grounds exist to deny Plaintiff's request to add "Count II: Illegal Search," due to bad faith and undue delay by the Plaintiff, and significant prejudice to Defendants.

**B.      Section 1983 Excessive Force Claim against Defendants Urban and Trevino**

Plaintiff argues that he should be able to assert a new Count III "constitutional violations because of the illegal search that occurred as a result of Defendants Trevino and Urban's illegal actions in obtaining the invalid warrant." (Pl. Br. 5). In other words, per Plaintiff, Defendants Trevino and Urban could be liable for the excessive force committed by other police officers that "flowed" from the obtaining of an illegal search warrant. In support of his theory, Plaintiff relies upon the Third Circuit case *Berg v. County of Allegheny*, 219 F.3d 261 (3d Cir. 2000) (per curiam), and an unpublished case from this circuit / district, *Elliot v. Lator*, No. 04-74817, 2006

WL 1806475 (E.D. Mich. June 28, 2006) (unpublished), appeal docketed, No. 06-2006 (6th Cir. July 27, 2006).

In addition to their Rule 15(a) arguments above, Defendants respond that such an amendment would be futile, since courts do not recognize a "but for" theory of excessive force "flowing from" an illegal search. (Def. Urban Br. 7).

The Sixth Circuit has recognized that "[a] proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). As this Court has previously noted in this case, the Sixth Circuit recognizes three theories of liability for § 1983 excessive force by a police officer: (1) active participation in the use of excessive force; (2) supervision of an officer who used excessive force; and (3) owing a victim a duty of protection against the use of excessive force. *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *see Watson*, 2007 WL 201084, at *8.

Plaintiff urges the Court to recognize an additional category of liability for excessive force – i.e., that when a police officer obtains an illegal warrant, that officer can be liable for any excessive force that may occur as a result of the execution of that warrant. The Court notes that the neither the Supreme Court, nor the Sixth Circuit, have recognized such a theory of liability. Furthermore, neither of the cases cited by Plaintiff supports such an excessive force claim under § 1983.

In *Berg*, the plaintiff argued that he was unlawfully arrested pursuant to an erroneously-issued arrest warrant. 219 F.3d at 266-68. The plaintiff did not bring a claim of excessive force

against the involved police officer defendants. The Court can find no support for Plaintiff's theory of excessive force in that opinion.

Likewise, the holding in *Elliot* does not support a claim of excessive force against Defendants Trevino or Urban. In *Elliot*, the plaintiffs brought federal and state law claims against two individual police officer defendants arising out of an alleged illegal search of their residence. 2006 WL 1806475, at *1. The two police officers obtained search and arrest warrants for an individual suspected of committing armed robbery. *Id*. at *3. The defendant police officers were also involved in the subsequent execution of the search warrant at the plaintiffs' residence. The plaintiffs alleged that the warrants lacked probable cause and that the executing police officers committed excessive force during the execution of the warrant. *Id*. at *4. The court found that: (1) the warrant was not supported by probable cause; (2) the police officers were not entitled to qualified immunity on the illegal search claim; (3) the plaintiffs were entitled to summary judgment on the illegal seizure claim; and (4) the plaintiffs were entitled to partial summary judgment on their excessive force claims:

> FN19. There are two caveats in this ruling. The search of Plaintiffs' home evidently was carried out by a team of officers, and the record is unclear as to the precise roles played by the two named Defendant troopers. Accordingly, the Court cannot be certain as to the precise extent of the two Defendants' participation in – and, hence, their liability for – the various actions that comprised the unlawful seizures of the five Plaintiffs.

> . . . .

> The foregoing analysis largely dictates the outcome of Plaintiffs' next Fourth Amendment claim-namely, that the Defendant troopers used excessive force during their search of Plaintiffs' residence. This claim, after all, is merely a more specific variation upon Plaintiffs' overall theory of unlawful seizure, and is governed by the same "reasonableness" standard that the Court applied above. *See Graham v. Connor*, 490 U.S. 386, 394-95, 109 S. Ct. 1865, 1871 (1989). Indeed, under the facts of this case, Plaintiffs' claims of unlawful seizure and excessive force are largely duplicative, since the force used against Plaintiffs was applied principally, if not exclusively, in aid of their detention

> during the course of the search. Not surprisingly, then, having already determined as a matter of law that the detention of Plaintiffs was unreasonable, the Court further concludes that the force employed to effect this detention also was unreasonable.

*Id*. at \*11 (emphasis added) (footnote omitted).

It is clear that Plaintiff misinterprets the district court's holding in *Elliot*. The court did not hold that defendant police officers, who both obtained the illegal warrant and committed the alleged illegal seizure and excessive force, were liable under a theory of excessive force that "flowed from" the obtaining of the illegal warrant. The court recognized that since it could not determine the extent of the two defendants' involvement in the illegal seizure / excessive force, it could not determine their liability for those actions. The court also noted that the defendants were not liable for the illegal seizure / excessive force committed by <u>other</u> police officers as the result of the invalid warrant. *Id*. at \*11 n. 19.

In the instant case, Defendants Trevino and Urban were not involved in the use of force during the search warrant execution, the supervision of such force, or were in a position where they failed to prevent excessive force by other officers. *See Turner*, 119 F.3d at 429. Neither the Sixth Circuit, *Berg*, nor *Elliot* recognizes Plaintiff's novel theory of excessive force liability. Therefore, the Court finds that Defendants Urban and Trevino cannot be held liable for an excessive force claim under a "but for" or "flowing from" the illegal search warrant.

Hence, the Court DENIES Plaintiff's request to amend the complaint to add "Count III: Excessive Force," on the basis of futility of amendment.

**III. CONCLUSION**

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Leave to File an

Amended Complaint. (Doc. No. 100).

**SO ORDERED.**


s/Paul D. Borman
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated:  June 29, 2007

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record by electronic means or U.S. Mail on
June 29, 2007.


s/Denise Goodine
Case Manager